IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:07CR71-1 |
| | : | |
| JAMES THOMAS HANCOCK | : | |
| | : | |

## AMENDED MOTION FOR SENTENCE REDUCTION
## PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)

Defendant, James Thomas Hancock, respectfully moves this Court for an order reducing his sentence based on the "extraordinary and compelling reasons" discussed below, pursuant to the newly-amended 18 U.S.C. § 3582(c)(1)(A)(i).

## INTRODUCTION

James Thomas Hancock, hereinafter Mr. Hancock, is approximately 14 years into a 477-month (over 30 years) prison term.[1] The bulk of this harsh sentence was not based on Mr. Hancock's role in the offense or the severity of the crime. Instead, it was a result of a 25 year mandatory consecutive sentence imposed pursuant to a second conviction under 18 U.S.C. § 924(c). Mr. Hancock received concurrent sentences of under five years for the underlying bank robberies; the remaining 35 years was the result of the mandatory consecutive sentences imposed pursuant to two convictions under 18 U.S.C. § 924(c).[2]

---

[1] Mr. Hancock's prison term is based on his conviction in MDNC File No. 1:06CR206-2, and his conviction in the instant case that was set to run consecutive to his sentence in 1:06CR206-2.
[2] Mr. Hancock received a sentence of 10 years for his first Section 924(c) conviction in MDNC 1:06CR206-2 and 25 years for his second Section 924(c) conviction in the instant case to run consecutive to his sentence in 1:06CR206-2.

1

On December 8, 2019, Mr. Hancock submitted a written request to the Warden, asking that a motion be filed on his behalf asking for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). As of the date of this filing, no such motion has been made.

Thanks to the amendments to § 3582(c)(1)(A) that were enacted as part of the First Step Act, the Court is now empowered to bring a measure of justice to Mr. Hancock's sentence, and we ask the Court to do just that for the reasons set out below. *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).

## PROCEDURAL BACKGROUND

On May 31, 2006, in case number 1:06CR206-2, a federal grand jury for the Middle District of North Carolina returned a thirteen-count Indictment against Sevelie Thompson, James Hancock, Saequon Winston, Tiah Bracken, Michelle Clayton. Count One of the Indictment charges that between February 2006, and April 24, 2006, all defendants conspired to commit bank robbery and armed bank robbery in violation of 18 U.S.C. §371. Count Three of the Indictment charges that on March 21, 2006, Thompson, Hancock, Bracken, and Clayton robbed Industrial Federal Savings Bank in violation of 18 U.S.C. §§ 2113(a) and 2. Count Four of the Indictment charges that on March 21, 2006, all defendants used a shotgun in a robbery of Industrial Federal Savings Bank in violation of 18 U.S.C. §§ 2113(d) and (2). Count Five of the Indictment charges that on March 21, 2006, all defendants carried and used, by brandishing a handgun during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(B)(i), and

2

2.[3] On September 17, 2006, the Government dismissed Count 1 against Mr. Hancock. (MDNC 1:06CR206-2, Doc. #63.) Mr. Hancock pled not guilty to Counts Three, Four, and Five, and proceeded to trial on September 25, 2006. On October 31, 2006, a jury found Mr. Hancock guilty of Counts Three, Four and Five. On March 6, 2007, Mr. Hancock was sentenced to 54 months imprisonment in Count Four of the Indictment and 120 months in Count Five of the Indictment to run consecutively to Count Four.[4] (Id. at Doc. #96.)

On February 26, 2007, a federal grand jury for the Middle District of North Carolina returned a three-count Indictment against James Thomas Hancock and Roy Antron Lowe. (Doc. #1) Count One of the Indictment charges that on July 6, 2006, Mr. Hancock and Mr. Lowe robbed Wachovia Bank in violation of 18 U.S.C. §§ 2113(a) and (2). Count Two of the Indictment charges that on July 6, 2006, Mr. Hancock and Mr. Lowe committed the bank robbery in Count One by use of a handgun in violation of 18 U.S.C. §§ 2113(d) and (2). Count Three of the Indictment charges that on July 6, 2006, Mr. Hancock and Mr. Lowe carried and used, by brandishing a handgun during and in relation to a crime of violence (Count Two) in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i), and 2. Mr. Hancock pled not guilty to the Indictment and proceeded to trial on June 20, 2007. On June 21, 2007, a federal jury found him guilty to Counts One, Two and Three. On January 2, 2008, Mr. Hancock was sentenced to 57 months imprisonment in

---

[3] Mr. Hancock was not charged with any criminal violations in Counts Two and Counts Six through Thirteen of the Indictment. (MDNC 1:06CR206-2, Doc. #1)

[4] Count Three of the Indictment is a lesser-included offense of Count Four; therefore Counts Three and Four were merged for sentencing.

Case 1:07-cr-00071-CCE   Document 164   Filed 10/23/20   Page 3 of 22

Count Two, to run concurrently with MDNC Case Number 1:06CR206-2, and 300 months in Count Three to run consecutively to Count Two of the Indictment and 1:06CR206-2.[5] (Doc. #48)

On February 20, 2020, Mr. Hancock filed a pro-se motion entitled Motion for Sentence Reduction Pursuant to 3582(c)(1)(A)(i). (Doc. #159) On September 1, 2020, this Court appointed the Federal Public Defender to represent Mr. Hancock in his Motion for Sentence Reduction and allowed Mr. Hancock to file an Amended Motion through counsel. (Doc. #161)

## DISCUSSION

The Court now has the authority to reduce Mr. Hancock's sentence based on the extraordinary and compelling circumstances presented here. First, it has the jurisdiction to hear this motion because more than 30 days have passed since the Warden's office received Mr. Hancock's request for a sentence reduction pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). Second, the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested the Court with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction. Third, considering the factors of 18 U.S.C. §3553(a), the circumstances presented here are extraordinary and compelling reasons warranting a sentence reduction.

### A. The Court Has Jurisdiction to Grant Release for "Extraordinary and Compelling Reasons"

---

[5] Count One of the Indictment is a lesser-included offense of Count Two; therefore, Counts One and Two were merged for sentencing.

4

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except for under four circumstances, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. Although the statute empowered courts with the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—the court's authority could be invoked only upon a motion by the Director of the BOP. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98–473 (HJRes 648), PL 98– 473, 98 Stat 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* P.L. 115-391,132 Stat. 5194, at §603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in *two* circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in- sentence request to the warden and a

Case 1:07-cr-00071-CCE   Document 164   Filed 10/23/20   Page 5 of 22

response."); *United States v. Cantu-Rivera*, No. CR H-89- 204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant."). Mr. Hancock submitted his request to the records office on December 8, 2019. (See Attached Exhibit A) As of the date of this filing, more than 30 days has passed since Mr. Hancock submitted his request. Accordingly, Mr. Hancock is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

### A. The Relief Requested Here is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement

#### 1. *Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances*

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis and to reduce fundamentally unfair sentences where such reasons exist. Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n.196 (1983). However, with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore

allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

*Id.* at 55–56 (emphasis added). Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, if "there is a justification for reducing a term of imprisonment." *Id.* at 56.

The situations listed in § 3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that previously could have been addressed through the (now abolished) parole system. *Id.* at 121. This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and permitted "later review of sentences in particularly *compelling situations.*" *Id.* (emphasis added). Notably, Congress imposed no limitations on courts' authority to make such determinations, declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion. The mandate was simple: If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long

7

sentence." S. Rep. No. 98-225, at 55–56 (1983).

Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated the safety valve. The BOP, which is of course part of the Department of Justice, rarely opened the gate.[6] As a result, Congress, through the First Step Act, allowed direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

2. *The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances*

When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18"). The resulting policy statement by the Commission sets forth the following factual considerations: (i) the medical condition of the defendant (including terminal illness and other serious conditions and impairments); (ii) the age of the defendant (for those 65

---

[6] *See, e.g.*, The Answer is No: Too Little Compassionate Release in US Federal Prisons, Human Rights Watch, 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).

Case 1:07-cr-00071-CCE   Document 164   Filed 10/23/20   Page 8 of 22

and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment); (iii) the family circumstances of the defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons" as determined by the BOP. USSG § 1B1.13, Application Note 1(A). The fourth category specifically includes "an extraordinary and compelling reason other than, or in combination with," the first three. *Id.*

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing complicated family circumstances. And though the policy statement—which has not been amended since the passage of the First Step Act—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence. Accordingly, that aspect of the commentary is not binding on the courts for two reasons: (1) the Guidelines are advisory only, *see United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act. This Court specifically addressed the issue in a published decision.

> There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BoP Director and makes no

mention of motions filed by defendants. U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons ... the court may reduce a term of imprisonment ...."); *id.* at application note 4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons."). The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, *see, e.g., United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463, at *2 (E.D. Wash. June 11, 2019), nor has it adopted a new policy statement applicable to motions filed by defendants.

While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i). An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the Commission's statutory role. *See United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute, 28 U.S.C. § 994(a)(2)(C), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority ...." (emphasis in original)). It is also inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate. Pub. L. 115-391, Title VI § 603(b), 132 Stat. 5194 (Dec. 21, 2018) (captioned "Increasing the use and transparency of compassionate release"); *see also Cantu*, 2019 WL 2498923, at *4 ("[T]he policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582 (emphasis in original) ).[8] Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement.

*United States v. Beck*, 425 F. Supp. 3d 573, 579–80 (M.D.N.C. 2019).

The Court's authority to reduce Mr. Hancock's sentence is not only consistent with the statute, but also with the language in the policy statement,

10

which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered *courts* to make this critical determination. This Court therefore may make an independent assessment of Mr. Hancock's case in considering whether extraordinary and compelling reasons warrant the reduction of his sentence.

> 1. *Extraordinary and Compelling Circumstances Warrant a Reduction in Mr. Hancock's Sentence*

The practice of "stacking" § 924(c) charges for violations that occur before a prior violation of §924(c) has become final has received wide condemnation for many years. Finally, with the passage of the First Step Act, this practice was eliminated. The government can no longer invoke the dramatically enhanced mandatory consecutive sentences prescribed for "second or successive" § 924(c) convictions in a case in which the *violation* of the statute occurred before a conviction under §924(c) has become final. From now on, those staggering sentences will be permissible only after a truly subsequent conviction. Notably, the fact that this amendment was titled a "Clarification of Section 924(c)" makes clear that 924(c) was never intended by Congress to result in sentences like the one at issue here. That fact alone constitutes an extraordinary and compelling basis for a reduction of sentence.

When Mr. Hancock was originally sentenced, based on the prevailing

interpretation of 18 U.S.C. § 924(c), his 924(c) conviction in the instant case was considered a "subsequent" conviction mandating a minimum 25-year sentence to run consecutive to any other sentence he might be serving. This was the case even though Mr. Hancock's violation of 18 U.S.C. § 924(c) in the instant case occurred before his first violation of 924(c) (MDNC 1:06CR206-2, Count 5) became final. The offense conduct for the instant offense occurred on July 6, 2006 well before his first violation of 924(c) in MDNC 1:06CR206-2 became final. With the passage of the First Step Act, Congress has amended 18 U.S.C. 924(c) to provide that the mandatory 25-year term of imprisonment is only triggered '[i]n the case of a violation of this subsection that occurs after a prior conviction of this subsection has become final." 18 U.S.C. §924(c).

In *United States v. Maumau,* the court noted Congress indicated with the passage of the Sentencing Reform Act in 1984 that it might be appropriate to provide compassionate release when sentences are "unusually long." *United States v. Maumau*, No. 2:08CR758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020). Yet the Bureau of Prisons has consistently refused to grant petitions for relief on this basis. *Id.* Courts, on the other hand, have begun granting compassionate relief based on changes to the § 924(c) sentencing framework. In *United States v. Urkevich*, the district court modified a sentence based entirely on the First Step Act's changes to § 924(c) sentencing:

> The Government acknowledges that Urkevich's three firearms counts would have carried mandatory terms of 60 months each (180 months), and not 300 months for Counts III and V (660 months total) if he had been

sentenced after the effective date of the First Step Act. Accordingly, the sentence he is serving (848 months) is forty years longer than the sentence he likely would have received (368 months) if he were sentenced under the law (18 U.S.C. § 924(c)(1)(C)) as it now exists. . . .

A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.

*United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *3 (D. Neb. Nov. 14, 2019); *see also United States v. Haynes*, 456 F.Supp.3d 496 at 15 (granting Defendant's motion for reduction in sentence finding his original sentence and it's severity as compared to the co-defendant and "it's harshness as to the sentences imposed on similar and even more severe criminal conduct today… is an extraordinary and compelling circumstance warranting relief under § 3582"); M*cCoy v. United States*, Case No. 2:03-CR-197, 2020 WL 2738225 at 3 (E.D. VA May 26, 2020) (granting Petitioner's motion upon a finding that the petitioner had demonstrated extraordinary and compelling reasons that merit a sentence reduction based on a combination of factors including (1) relative youth at the time sentencing; (2) the length of the mandatory sentence imposed and the disparity between individuals sentenced before and after the passage of the First Step Act.); and *United States v. Redd* Case No. 1:97-CR-00006-AJT, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020) (the court recognized that the "gross disparity" between the sentence that the defendant received and the sentence that he would have received after passage of the First Step Act presented an "extraordinary and

13

compelling reason" for compassionate release.)

Here, stacked § 924(c) convictions resulted in a sentence 18 years (216 months) greater than the sentence that would be imposed today. In total, Mr. Hancock's two § 924(c) convictions for brandishing a weapon in relation to a crime of violence would result in an automatic sentence of 17 years –10 years for his violation of the statute in 1:06CR206-2 and 7 years for his violation in the instant case after the passage of the First Step Act– rather than a total consecutive sentence 35 years (10 years on the first count and 25 years for the second). A sentence reduction in Count Three of the Indictment to 7 years would remedy the injustice that resulted from stacked successive § 924(c) convictions.

The Government may argue that Mr. Hancock's successive § 924(c) convictions are not extraordinary and compelling circumstances warranting a sentence reduction, because Congress did not make the change to § 924(c) retroactive. However, the fact that Congress did not make the change to 924(c) retroactive does not preclude this court from considering the sentence disparity it creates in Mr. Hancock's case as an extraordinary and compelling circumstance warranting a reduction in Mr. Hancock's mandatory 25-year term of imprisonment. Indeed, Congress could have chosen to make its changes to § 924(c) retroactive, but this should have little bearing on this Court's decision. Other courts have found that the retroactivity of the changes to § 924(c) does not preclude the court from considering the unusually long sentences and the sentencing disparity the stacking of successive § 924(c) convictions create as

14

extraordinary and compelling circumstances warranting a sentence reduction. "It is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." *United States v. Maumau*, No. 2:08CR758-TC-11, 2020 WL 806121 at \*7 (D. Utah Feb. 18, 2020).

A motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) also requires the court to consider other factors in determining if relief is warranted, including a defendant's rehabilitation and other factors bearing on the person the defendant is today. As set forth below, these factors further establish the sort of "extraordinary and compelling reasons" that warrant a reduction of his 357-month sentence. *See also Cantu-Rivera*, 2019 WL 2578272, at \*2 (the court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining if resentencing was appropriate).

**B. The Criteria for Reassessing the Length of Mr. Hancock's Sentence Weigh Strongly in Favor of a Sentence Reduction.**

In determining whether Mr. Hancock's sentence should be reduced, the Court must decide, *inter ali*a, whether Mr. Hancock presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all of these factors weigh strongly in favor of relief in Mr. Hancock's case.

Case 1:07-cr-00071-CCE   Document 164   Filed 10/23/20   Page 15 of 22

### 1. Mr. Hancock Is Not a Danger

Mr. Hancock is not a danger to the community. Though he engaged in serious criminal conduct that was deserving of serious punishment, the evolution of Mr. Hancock character during the time he has been incarcerated precludes a finding that he poses a danger. Mr. Hancock's lengthy sentence was not based in any way on the dangerousness of his criminal conduct or the need to incapacitate him, but was instead the result of mandatory sentence enhancement.

During his incarceration, Mr. Hancock has completed over 400 hours of educational and vocational courses, including in courses for interview skills, commercial driver's license, victim awareness, re-entry simulation. (See Exhibit "B") Mr. Hancock also completed his GED. <u>Id</u>.

Mr. Hancock's rehabilitation is further exhibited by his conduct while in BOP. He has been a model inmate, incurring only two infractions since his incarceration in 2007. He has not had any infractions since 2015, and that infraction was for failing to stand for count. (See Exhibit "C") Although Mr. Hancock committed serious crimes when he was 18 years old, his education and ability to follow the rules in the BOP, show that has matured and is clearly not a danger to the community.

### 2. The Relevant § 3553(a) Factors Weigh Strongly in Favor of Relief

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether Mr. Hancock's request for a sentence reduction should be granted. As discussed above, Mr. Hancock's rehabilitation and his good behavior

during his incarceration (with limited disciplinary history) weigh in favor of a reduced sentence. While his crimes were serious, he has accepted responsibility for them and has already endured serious punishment for them.

The 14-plus years Mr. Hancock has already served in prison have been transformative for him. He has been dedicated to his rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." There is no doubt that the time Mr. Hancock has already served is more than sufficient to achieve the objectives of his sentence and incarceration, including to deter similar misconduct.

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840, at *8 (E.D.N.Y. Apr. 22, 2019). When Mr. Hancock was arrested, he was 18 years old with a limited criminal history. At the time of his arrest, he was a high school dropout who struggled with reading and writing. (PSR ¶40). Courts have found that age, specifically, youth, can be a mitigating factor that the court can consider in fashioning an appropriate sentence. A mitigating factor the original sentencing court could not consider, due to the unjust mandatory sentencing requirement.

Mr. Hancock acknowledges that the offense conduct he committed at the age of 18 is serious in nature. In determining whether this Court should reduce his

17

sentence, the Defendant would ask the Court to consider his age when he committed the offense conduct. As recognized by the Supreme Court, people in their teens who commit offenses are not as culpable as adults who commit the same offense and, thus, youthfulness at the time a defendant commits a crime is a mitigating factor. *Gall v. United States*, 129 S. Ct. 586 (2007). In *Gall*, the Supreme Court noted that the district court was well-supported by Supreme Court case law when it found the defendant's immaturity at the time he committed the offense was a strong mitigating factor in determining his punishment. 128 S. Ct. at 601. The Court quoted with approval the district court's statement:

> Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. The recent National Institute of Health report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into conduct of a defendant. Id. (internal notations omitted).

Further, the *Gall* district court found that the defendant's later behavior indicated, "that he had matured and would not engage in such impetuous and ill-considered conduct in the future." 128 S. Ct. at 601. The Supreme Court upheld the district court's decision to vary from the advisory guideline sentence of 30-37 months imprisonment to 36 months of probation. Like *Gall*, Mr. Hancock has demonstrated that he has matured and would no longer engage in "such impetuous and ill-considered conduct in the future." 128 S. Ct. at 601.

The relevance of youth as a mitigating factor derives from the fact that the

signature qualities of youth are transient, as individuals mature, the impetuousness and recklessness that dominate younger years can subside. Mr. Hancock would ask the Court to consider that he was a very young man when he committed all of his criminal conduct. Mr. Hancock has he matured and is no longer the 18 year old person who committed the criminal conduct at issue here. He has used the time he has been incarcerated to better himself.

When Mr. Hancock was arrested, he was a healthy 18 year old. (PSR ¶ 33.) During his incarceration, he has developed hypertension. The CDC reports that patients with hypertension **"might be at an increased risk** for severe illness from COVID-19." [https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?_CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions](https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?_CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions) (citing, *inter alia*, Pranata, R., et al., *Hypertension is associated with increased mortality and severity of disease in COVID-19 pneumonia: A systematic review, meta-analysis and meta-regression.* Journal of the Renin-Angiotensin-Aldosterone System, 2020. p. 1470320320926899.) (accessed July 22, 2020) (emphasis in original).

Mr. Hancock asks the Court to consider his increased risk to exposure to serious illness and death in determining an appropriate sentence in this case. Indeed, a number of courts have considered the medical condition of hypertension and the COVID-19 pandemic a basis to grant a sentence reduction under 18 U.S.C. § 3582. *See, e.g.*, *United States v. Salvagno*, No. 5:02-cr-00051-LEK, ECF No. 1181

(N.D.N.Y. June 22, 2020); *see also United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"); *United States v. Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) ("Defendant's medical records show that he suffers from hypertension. This condition increases his risk for serious complications from contracting COVID-19, including death."); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at * 9 (S.D.N.Y. Apr. 20, 2020) (finding hypertension to be a comorbidity that increases the risk of death from COVID-19, and "reject[ing] the Government's contention that Mr. Scparta's general good health before the pandemic speaks to whether he should now be released.").

Mr. Hancock understands that the offense conduct he committed in his youth is serious in nature. Mr. Hancock's time in prison has changed him; his conduct and initiative during his incarceration demonstrate rehabilitation. He has spent his time in prison improving himself, has had no major disciplinary infractions. He has demonstrated an unwavering commitment to becoming a productive member of society upon release.

For the reasons mentioned above, we respectfully urge the Court to use the power conferred by the First Step Act to reduce Mr. Hancock's sentence in Count Three from 300 months imprisonment to 84 months imprisonment to run consecutive to Count Two of the Indictment and his sentences in file number 1:06CR206-2. Including his sentence in MDNC 1:06CR206-2, this will be a total

Case 1:07-cr-00071-CCE   Document 164   Filed 10/23/20   Page 20 of 22

sentence of 261 months imprisonment, still a significant term of imprisonment.[7]

CONCLUSION

Congress never intended to permit, let alone to mandate, the excessive punishment Mr. Hancock received in this case. It has now given the Court the power to grant Mr. Hancock relief from that sentence. Mr. Hancock respectfully requests that the Court take this opportunity to grant a reduction in his sentence based on extraordinary and compelling reasons, and reduce his sentence in Count Three from 300 months to 84 months imprisonment.

Respectfully submitted this the 23rd day of October, 2020.

LOUIS C. ALLEN III
FEDERAL PUBLIC DEFENDER

 /s/ *Tiffany T. McGregor*
TIFFANY T. MCGREGOR
Assistant Federal Public Defender
North Carolina State Bar No. 34017
301 N. Elm Street, Suite 410
Greensboro, NC 27401
Phone: (336) 333-5455 ext. 225
Email: Tiffany_McGregor@fd.org

---

[7] Mr. Hancock is not requesting the Court modify his sentence in 1:06CR206-2.

Case 1:07-cr-00071-CCE   Document 164   Filed 10/23/20   Page 21 of 22

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2020, I electronically filed the foregoing

Entry of Appearance with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following:

>Ms. Angela Hewlett Miller
>U. S. Attorney's Office
>101 S. Edgeworth St., 4th Floor
>Greensboro, NC 27401
>Phone: 336-333-5351
>Email: angela.miller@usdoj.gov

This the 23rd day of October, 2020.

>LOUIS C. ALLEN III
>FEDERAL PUBLIC DEFENDER

>/s/ *Tiffany T. McGregor*
>TIFFANY T. MCGREGOR

22