IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | 1:06CR206-2 |
| v. | : | 1:07CR71-1[1] |
| | : | |
| JAMES THOMAS HANCOCK | : | (FILED UNDER SEAL) |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE

NOW COMES the Defendant, James Thomas Hancock, by and through undersigned counsel, and hereby replies to the Government's Response in Opposition to Defendant's Motion for Compassionate Release (Doc. #165) and the Government's Supplemental Response to Defendant's Motion in light of *United States v. McCoy* (Doc. #171).

### Procedural Background

On or about February 18, 2020, the Defendant filed a pro-se motion entitled "Motion for Sentence Reduction Pursuant 3582(c)(1)(A)(i) requesting a sentence reduction based on extraordinary and compelling reasons, arguing that his stacked mandatory consecutive sentences under 18 U.S.C. § 924(c) constituted an "extraordinary and compelling" reason for release in light of the amendments to the § 924(c) statute brought by the First Step Act. (Doc. #159) On June 29, 2020, Mr. Hancock filed an amended pro-se motion entitled "Motion to Amend the Defendants Motion for Sentence Reduction Pursuant to 3582(c)(1)(A)(i)," requesting compassionate release based on the COVID-19 pandemic and his underlying health

---

[1] Unless otherwise noted, docket entry references are to *United States v. Hancock*, 1:07CR71-1.

1

issue (high blood pressure). (MDNC 1:06CR206-2, Doc. #286). On September 1, 2020, the Court appointed the Federal Public Defender's Office to represent Mr. Hancock and permitted counsel to file an amended motion on behalf of Mr. Hancock. (Doc. #161). On October 23, 2020 through counsel, Mr. Hancock filed an Amended Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that Mr. Hancock's sentence be reduced in case number 1:07CR71-1 and noting that Mr. Hancock was not asking for a reduction in his sentence in case number 1:06CR206-2. (Doc. #164 at 21, n. 7.) On November 9, 2020, the Government responded opposing the requested relief. (Doc. #165.) On December 18, 2020, the Government supplemented its opposition in light of *United States v. McCoy,* 983 F.3d 271 (4th Cir. Dec. 2, 2020). (Doc. #171.)

## Discussion

Mr. Hancock's motion for sentence reduction pursuant to 18 U.S.C. § 3582 is properly before this court because he has exhausted all administrative remedies. The Government acknowledges that the Fourth Circuit held in *United States v. McCoy*, a court may consider whether a defendant serving sentences that Congress views as dramatically longer than necessary or fair constitutes an extraordinary and compelling reason under 18 U.S.C § 18 U.S.C. § 3582(c)(1)(A)(i) warranting a sentence reduction. Doc. #171 at 4-5, citing *United States v. McCoy* at 285. The Government takes the position that Mr. Hancock's request for a sentence reduction should be denied because he has failed to present extraordinary and compelling reasons for a sentence reduction and the sentencing factors of 18 U.S.C. § 3553(a) do

2

not support a reduction in sentence. Docs. ## 165, 171.

The Government spends a substantial portion of its response and supplemental response summarizing the offense conduct and emphasizing its violent nature. Mr. Hancock is not arguing that his sentence should be reduced because his offense conduct was not serious, nor is he trying to minimize his conduct. Mr. Hancock is also not arguing that the change in the § 924(c) stacking rules alone presents an extraordinary reason for his sentence in Count 3 to be reduced from 25 years to 7 years imprisonment. Rather, it is Mr. Hancock's position that considering all relevant factors together, the severity of his sentence considering his age and criminal history when he committed offense conduct, the disparity between his sentences and those who are sentenced under the current law, and his rehabilitation presents extraordinary and compelling reasons for a sentence reduction.

> A. <u>The Unjust Severity and Gross Disparity of Mr. Hancock's Sentence are Extraordinary and Compelling Reasons Warranting a Sentence Reduction.</u>

The First Step Act eliminated the practice of "stacking" § 924(c) sentences. P.L. 115-391, 132 Stat 5221, at § 403(a) (Dec. 21, 2018). The phrase "second or subsequent conviction" was replaced with "violation of this subsection that occurs after a prior conviction under this subsection has become final. *Id.* Under current law, a defendant, like Mr. Hancock, a person who has multiple violations of § 924(c) but none occurring before a prior conviction has become final, is no longer subject to the mandatory 25-year consecutive penalty. In Mr. Hancock's case, stacked § 924(c)

3

convictions resulted in a sentence 18 years (216 months) greater than what would be imposed today.

There is a gross disparity between Mr. Hancock's current sentence and the one he would receive if sentenced for the same crimes today. Mr. Hancock was convicted of two robberies in which he brandished a firearm. Pursuant to the United States Sentencing Guidelines and 18 U.S.C. § 924(c) in effect at the time of his offenses, Mr. Hancock was sentenced to a little under 5 years for the underlying bank robberies and a consecutive 35 years for the 924(c) convictions for total sentence of 477 months imprisonment.[2]

Today, the mandatory sentence for Mr. Hancock's 924(c) offenses would be drastically different. The First Step Act of 2018 clarified the sentencing structure for violations of §924(c) that occur before a prior violation of §924(c) has become final. The "stacking" of 924(c) consecutive punishments is no longer permitted for violations that occur before a prior violation has become final. Therefore, if sentenced today, Mr. Hancock would likely receive a consecutive seven-year sentence for his violation of 18 U.S.C. § 924(c) in case number 1:07CR71-1. This is dramatically lower than the consecutive 25-year sentence he received in 2008.

Considering Mr. Hancock's age and minimal criminal history at the time of the offense, his sentence of 477 months is unusually long and severe. His sentence

---

[2] Mr. Hancock received a 10-year sentence in his first conviction of §924(c) in MDNC No. 1:06CR206-2 and a consecutive 25-year sentence in his second §924(c) conviction (Count 3 in the instant case). He received a 54 months sentence for the robbery conviction in MDNC No. 1:06CR206-2 and a 57-month sentence for the robbery conviction in the instant case both to run concurrently with one another, but to run consecutively to the 924(C) sentences.

4

is longer than the average federal sentences imposed today for sexual abuse, murder, kidnapping and manslaughter. (*See* Attached Exhibit A). Other courts have recognized this disparity and injustice. In *United States v. Redd*, the court found that stacked § 924 sentences were decades longer than sentences imposed for federal offenses like murder, kidnapping, and manslaughter. *United States v. Redd*, 444. Supp. 3d at 723 & n. 9. (E.D. Va. Mar. 16, 2020)

Many courts have recognized this sweeping change in the sentencing of 924(c) offenses as an extraordinary and compelling reason supporting a sentence reduction. See, e.g. *United States v. McCoy,* No. 20-6821, 2020 WL 7050097, at *11 (4th Cir. Dec. 2, 2020) ("In sum, we find that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' §924(c) sentences and the extent of the disparity between the defendants sentences and those provided for under the First Step Act."); and *United States v. Curtis,* No. 5:92-CR-114-1BR, Doc. 136 at 6 (W.D.N.C. Nov. 19, 2020) (finding that the sentence disparity of a defendant serving a sentence 13 years longer than would a person convicted today for the same offense constitutes an extraordinary and compelling reason to warrant reducing the defendant's sentence.); and *United States v. Guarascio*, No. 5:04-CR-45-2BO, Doc. 243 at 7 (E.D.N.C. Nov. 25, 2020) ("The Court, in its discretion, determines that the goals of sentencing have been achieved by the sentence served to date in this case. Guarascio has been incapacitated for more than sixteen years and the public has been protected from him.) In discussing the 18-year disparity between the

5

defendant's sentence and his sentence following the First Step Act, the court in *United States v. Redd* stated, "[t]hat disparity is primarily the result of Congress' conclusion that sentences like Mr. Redd's are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under §924(c), as originally enacted, as well as a legislative declaration of what level punishment is adequate."[3] 444 F. Supp.3d 717, 723 (E.D. Va. Mar. 16, 2020). The same statement applies to Mr. Hancock's case.

---

[3] *See also United States v. Jones,* No. 5:06-CR-52-IBO (E.D.N.C. Dec. 7, 2020); *United States v. Clausen*, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020) (finding that combination of stacked sentences under 924(c) and rehabilitation justify compassionate release); *United States v. Haynes*, 456 F.Supp.3d 496, 514 (E.D.N.Y. 2020) (concluding that the "FSA's elimination of the §924(c) sentencing weaponry…is an extraordinary and compelling circumstances warranting relief under § 3582(c)"); *United States v. Marks*, 455 F. Supp.3d 17, 26 (W.D.N.Y. 2020) (finding combination of 924(c) sentencing changes and rehabilitation to warrant compassionate release); *United States v. McPherson*, 454 F. Supp.3d 1049, 1053 (W.D. Wa. 2020) (finding 924(c) reforms in combination with other reasons to justify release); *United States v. Defendant(s)*, 2020 WL 1864906, at *6 (C.D. Cal. Apr. 13, 2020) (same); *United States v. Decator*, 452 F. Supp.3d 320, 324 (D. Md. 2020) (agreeing that the FSA's changes in the calculation of multiple 924(c) offenses to constitutes an extraordinary and compelling reason); *United States v. Chan*, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020) (concluding that that the defendant's "rehabilitation efforts in combination with the amendments to [§] 924(c)'s stacking provisions ... demonstrated extraordinary and compelling reasons to reduce his sentence"); *United States v. Owens*, No. 97-CR-2546-CAB, ECF 93 at 4 (S.D. Cal. Mar. 20, 2020) (same); *United States v. Redd*, 444 F. Supp.3d 717, 723–24 (E.D. Va. 2020) (stating, with respect to the repeal of 924(c) stacking, "These are, the Court finds, extraordinary and compelling developments that constitute extraordinary and compelling reasons that warrant a reduction to Mr. Redd's sentence of incarceration."); *United States v. Young*, 458 F. Supp.3d 838, 848 (M.D. Tenn. 2020) ("The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reasons for a sentence reduction…."); *United States v. O'Bryan*, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) (answering yes to the question, "Does the FSA's modification of the § 924(c) sentencing regime constitute an 'extraordinary and compelling reason' for a sentencing reduction?"); *United States v. Maumau*, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]his court concludes that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief ."); *United States v. Urkevich*, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); *United States v. Brown*, 411 F. Supp.3d 446, 454 (S.D. Iowa 2019).

There is an 18-year disparity between the sentence Mr. Hancock's current sentence and the sentence he would receive today for these same crimes. Mr. Hancock was 18 years old when he committed the crimes for which he is currently incarcerated. He has now spent almost that same amount of time imprisoned. Mr. Hancock is currently serving an unusually long sentence based on a mandatory minimum sentence that Congress no longer deems necessary to accomplish the ends of justice. Mr. Hancock presents extraordinary and compelling reasons that warrant modification of his unusually severe sentence.

B. <u>Mr. Hancock's Sentence Reduction is Consistent with Applicable Sentencing Commission Policy Statements</u>

Prior to granting release, the Court must also find that the sentence modification is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). Courts have found that that because the Sentencing Commission has failed to revise U.S.S.G. §1B1.13 following the passage of the First Step Act, there is currently no "applicable" policy statement. *See United States v. Beck,* 425 F. Supp. 3d 573, 579-80 (M.D.N.C. 2019, see also *United States v. McCoy, 9*81 F.3d 271, 284 (4th Cir. 2020).

The Court must also consider whether the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The determination of whether the defendant would be a danger to the safety of others is guided by factors set forth in 18 U.S.C. § 3142(g). These factors include the nature and circumstance of the current offense, the history and characteristics of the

7

defendant, and the nature of the danger that may be posed to the community upon the defendant's release. 18 U.S.C. § 3142(g).

Mr. Hancock would not be a danger to society if his sentence were reduced. Although his crimes are considered violent, they occurred over 15 years ago, and Mr. Hancock has had an exceptional disciplinary record while incarcerated. Since his incarceration 14 years ago, Mr. Hancock has had only two infractions. His last infraction for failing to stand for count occurred over 5 years ago and was not violent in nature. Doc. # 164, Exhibit C. Currently the BOP uses a risk assessment tool to predict whether someone currently incarcerated is at high, medium, or low risk for reoffending. On Mr. Hancock's most recent assessment, he was assessed at being at a low risk level for reoffending. (*See* Attached Exhibit B, Male Pattern Risk Scoring).

Data on arrest rates for violent offenses supports this conclusion. Arrests for violent crimes tend to peak in early adulthood and decline as offenders age.[4]



---

[4] Alexi Jones, *Reforms Without Results: Why States Should Stop Excluding Violent Offenses from Cirminal Justice Reforms (Apr. 2020), https://www.prisonpolicy.org/reports/violence.html#age (discussing research explaining "age-crime" curve.*

Researches have consistently found that those who have committed crimes, usually "age out" of crime especially if they have had educational and vocational opportunities while incarcerated.[5] This will be the case for Mr. Hancock. Mr. Hancock committed his offenses when he was 18 years old. At the time of his offense, Mr. Hancock was a high school dropout. Doc. # 160 at 12, PSR ¶40. Since his incarceration, Mr. Hancock has gotten his GED and completed numerous educational and vocational courses. (*See* Attached Exhibit C, Certificates of Completion). In addition to Mr. Hancock's educational and vocational courses, he is looking toward the future and has developed a safe seat toilet seat cover, for which he has applied for a patent and hopes that it will contribute to his financial growth. (See Attached Exhibit D, Patent Application Receipt) Now at, 33 years old, Mr. Hancock has shown that he poses little to no risk of violence.

In addition, Mr. Hancock has strong family support. Throughout his incarceration, Mr. Hancock has maintained meaningful relationships with his family. Because of this, Mr. Hancock has a loving and supportive family who are hoping and planning for his early release. (*See* Attached Exhibit E, Family and Friends Letters of Support.)

---

[5] See Id.; See also David B. Wilson, et.al, A Meta-Analysis of Corrections-Based Education, Vocation, and Work Programs for Adult Offenders, J. RESEARCH IN CRIME & DELIQUINCY 37 (Nov. 1, 2020), https://doi.org/10.1177/0022427800037004001 (finding in-prison vocational training and work programs linked to reduced recidivism rates of participants).

C. <u>The Sentencing Factors of 18 U.S.C. § 3553(a) Support a Reduction in Sentence.</u>

Finally, the Court must consider the sentencing factors of 18 U.S.C. §3353(a) before granting relief to Mr. Hancock. 18 U.S.C. § 3582(c)(1)(A). These factors include Mr. Hancock's history and personal characteristics, the nature of the offense, and the need for the sentence to reflect the seriousness of the offense and provide just a punishment. 18 U.S.C. § 3553(a).

Mr. Hancock recognizes the seriousness of his offense, the trauma that he and his co-defendants caused their victims, and understands that significant consequences can and should result from his actions. Mr. Hancock committed a serious crime when he robbed two banks and brandished a firearm. However, in looking his age when he committed the instant offenses, his rehabilitative efforts, and the nature and circumstance of his offense the Court should reduce his sentence in Count 3 to seven years' imprisonment.

In March 2006, Mr. Thompson recruited Mr. Hancock to rob a bank. Mr. Hancock agreed and Mr. Hancock, Mr. Thompson, Ms. Bracken, and Ms. Clayton planned to rob the Industrial Savings Bank in Midway, NC. MDNC No. 1:06CR206 Doc. #289 at 5-6, 1:06CR206-2 PSR ¶¶10, 12. Mr. Hancock entered the bank, brandished a sawed off shotgun and ordered the tellers to the floor. *Id.* at 6, PSR ¶12. During the robbery, one of the tellers was made to walk to the bank vault to retrieve money. While this teller walked to the vault, Mr. Thompson made

10

statements to the teller to make her move faster. MDNC No. 1:06CR206 Doc. #108 (Trial Transcript) at 31-32, 43.[6] After getting the money from the vault, Mr. Hancock, Mr. Thompson, Ms. Bracken, and Ms. Clayton left the bank. Although this was a violent crime, no one was physically injured during the commission of the offense.

On July 6, 2006, Mr. Hancock, Mr. Roy Lowe and Mr. Joshua Lowe robbed Wachovia Bank. Doc. #160 at 3, PSR ¶5. Mr. Hancock entered the bank, pointed an automatic pistol at a bank teller's chest, and ordered the teller to give him money. *Id.* Mr. Hancock unloaded the teller drawers and him and his co-defendants left the bank. Again, no one was physically injured during the commission of the offense.

Mr. Hancock understands that his behavior during the commission of these offenses was dangerous and placed his victims in great fear. He is remorseful and regrets his decisions. Since he has been incarcerated he has taken a 100 hour victim awareness course and understands his actions were traumatizing, which he greatly regrets. (See attached Exhibit F, Defendant Statement).

In this case, a consideration of all factors support a reduction in Mr. Hancock's sentence. Under the circumstances, it is apparent that Mr. Hancock has shown "extraordinary and compelling" reasons for a reduction in his 300-month sentence to 84 months in Count 3, the mandatory minimum sentence Mr. Hancock

---

[6] During their trial testimony, Mr. Thompson and Ms. Bracken testified that Mr. Thompson was the person ordering the tellers to go to the vault. Mr. Bracken testified that she did not hear Mr. Hancock did not speak at all during the robbery. Doc. #108 at 32. Mr. Thompson testified that he was the person talking about not moving fast enough. Doc. #108 at 43.

11

would face if sentenced for the same conduct today. Mr. Hancock and his co-defendants were in their teens or early twenties when they committed the offense conduct. Mr. Hancock's offense conduct was serious, but it is not outside of the heartland of a typical offense conduct involved in a bank robbery and 924(c) brandishing offense. There is nothing about the Mr. Hancock's offense conduct that warrants a sentence 18 years longer than the guidelines and the mandatory minimum sentence now required by 18 U.S.C. § 924(c). A sentence of nearly 40 years[7] imprisonment is excessive and greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). The Government has not offered any reasons why a sentence of 261 months, would not provide a just punishment, serve as an adequate deterrence, and promote respect for the law. Certainly, one could argue that in light of Mr. Hancock's age, his minimal criminal history, lack of prior terms of imprisonment, and the required 17-year mandatory minimum sentence he faces for the 924(c) convictions, that a downward variance might be appropriate for the underlying robbery convictions. In fact, majority of Mr. Hancock's co-defendants received lessor sentences and have been released from prison.[8] Mr. Hancock's projected release date is July 13, 2040. *See* https://www.bop.gov.inmateloc (last visited January 20, 2021).

---

[7] The aggregate of Mr. Hancock's sentences in this case and 1:06CR206-1 is 39.75 years (477 months).

[8] Mr. Saequon Winston was released on July 5, 2018. Ms. Michelle Clayton was released on February 3, 2015. Ms. Tiah Bracken was released on April 14, 2015. Mr. Roy Lowe was released on December 30, 2020. Mr. Sevelie Thompson's projected release date is December 18, 2021. *See* https://www.bop.gov.inmateloc (last visited January 20, 2021).

Mr. Hancock would also ask the Court to consider that as an inmate he is at greater risk of contracting COVID-19. He has not been diagnosed with hypertension, but has had several elevated blood pressure readings.[9] Mr. Hancock reports that instead of monitoring him more closely the BOP medical staff advised him to purchase over the counter medication. Mr. Hancock requests that his sentence be reduced so that he treat his blood pressure concerns sooner rather than later.

## Conclusion

For the foregoing reasons and those in his amended motion, this Court should grant Mr. Hancock's motion for sentence reduction, order his sentence in Count 3 be reduced from 300 months imprisonment to 84 months imprisonment.[10]

Respectfully submitted, this the 20th day of January, 2021.

        LOUIS C. ALLEN III
        Federal Public Defender

        /s/ Tiffany T. McGregor
        TIFFANT T. MCGREGOR
        Assistant Federal Public Defender
        North Carolina State Bar No. 34017
        301 N. Elm Street, Suite 410
        Greensboro, NC 27401
        Phone: (336) 333-5455
        E-mail: tiffany_mcgregor@fd.org

---

[9] On July 30, 2020, Mr. Hancock's blood pressure was 121/82. On April 21, 2020, Mr. Hancock's blood pressure was 138/162, and on December 13, 2019, his blood pressure was 150/87. Doc. No. 166, page 2.

[10] In addition, Mr. Hancock has requested that counsel ask the Court to consider a reduction to time served.

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2021, the foregoing was with the Clerk of the Court using the CM/ECF system and to the following:

>Angela Miller
>Assistant United States Attorney
>
>Joseph Miller
>Assistant United States Attorney
>
>Julie Domachowski
>Assistant United States Attorney

Respectfully submitted, this the 20th day of January, 2021.

>LOUIS C. ALLEN III
>Federal Public Defender
>
>/s/ Tiffany T. McGregor
>TIFFANT T. MCGREGOR
>Assistant Federal Public Defender
>North Carolina State Bar No. 34017
>301 N. Elm Street, Suite 410
>Greensboro, NC 27401
>Phone: (336) 333-5455
>E-mail: tiffany_mcgregor@fd.org

15