IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06-CR-206-2 |
| | ) | 1:07-CR-71-1 |
| JAMES THOMAS HANCOCK, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The defendant-inmate, James Hancock, has been incarcerated for some 14 years, since he was 18 years old, serving 477 months as a result of his participation in two armed bank robberies in 2006. He filed this motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) based on a post-sentencing change in the law and positive post-conviction conduct. His motion will be denied without prejudice to a renewed motion when Mr. Hancock is closer to the possibility of a time-served sentence.

## **BACKGROUND**

In May 2006, a grand jury returned a multi-count indictment against Mr. Hancock based on his role in an armed robbery on March 21, 2006. Count One alleged conspiracy to commit bank robbery, Count Three alleged bank robbery, Count Four alleged armed bank robbery, and Count Five alleged carrying and brandishing a short-barreled shotgun during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Case No. 1:06-CR-206-2, M.D.N.C., Doc. 1 (Counts One, Three, Four, and Five).[1] Following a

---

[1] All document citations are to the docket in No. 1:07-CR-71 unless otherwise specified.

jury trial in October 2006, Mr. Hancock was found guilty of the robbery counts and of brandishing a firearm during a crime of violence. *Id.* at Doc. 79.[2]

Before Mr. Hancock was sentenced for these three crimes, he was indicted on February 26, 2007, for an armed bank robbery that took place on or about July 6, 2006. Doc. 1. Soon thereafter, on March 6, 2007, Mr. Hancock was sentenced for the March 2006 robbery convictions. Case No. 1:06-CR-206-2, M.D.N.C., Minute Entry 03/06/2007. The sentencing court considered Mr. Hancock's age and minor criminal history alongside the seriousness of his offenses.[3] *Id.* at Doc. 115 at 4–5. The court concluded that a sentence near the top of the guideline range of 54 months for the robbery counts was appropriate, followed by the consecutive 120-month mandatory minimum sentence required under 18 U.S.C. § 924(c)(1)(B)(i) for the one count of brandishing a firearm during a crime of violence. *Id.* at Doc. 96 at 2.

Following a jury trial in June 2007 on the charges in the second indictment for the July 2006 robbery, Mr. Hancock was found guilty and convicted of one count of bank robbery, one count of armed bank robbery, and one count of carrying or using a firearm in relation to a crime of violence in violation of § 924(c). Doc. 41. Under the law at the time, this § 924(c) conviction triggered a 25-year mandatory minimum consecutive

---

[2] The conspiracy charge was dismissed before trial to prevent confusion and unnecessary jury instructions. *See* Case No. 1:06-CR-206-2, M.D.N.C., Doc. 289 at ¶ 5. The court adopted the presentence report without change. *Id.* at Doc. 306.

[3] The sentencing judge has retired, and the case has been reassigned to the undersigned.

sentence. 18 U.S.C § 924(c) (2006); *see Brown v. United States*, No. ELH-00-0100, 2020 WL 7425328, at *10 (D. Md. Dec. 17, 2020).

Mr. Hancock was sentenced for the July 2006 robbery convictions on January 2, 2008. Minute Entry 01/02/2008. At that point, his sentences for the March 2006 robbery had been affirmed, but the mandate had not issued. *See* Case No. 1:06-CR-206-2, M.D.N.C., Docs. 124–25. The sentencing court concluded that a sentence near the bottom of the guideline range for the robbery counts was appropriate, considering Mr. Hancock's lengthy sentence for the charges stemming from the March 2006 robbery and the 25-year mandatory minimum consecutive sentence for the second § 924(c) conviction. Doc. 153 at 3–5. The court sentenced Mr. Hancock to a total of 357 months imprisonment on these charges: 57 months for the bank robbery counts, to run concurrently with the bank robbery sentences arising from the March 2006 robbery, and 300 months for the firearm offense, to run consecutively to all other sentences, followed by five years of supervised release. Doc. 48 at 2–3.

In summary, Mr. Hancock is serving a 477-month sentence: concurrent 54- and 57-month sentences for the robbery convictions, followed by 120 months for his first § 924(c) conviction, followed by 300 months for his second § 924(c) conviction. *See* Doc. 153 at 4. His projected release date is July 13, 2040. *See* https://www.bop.gov.inmateloc (last visited Mar. 3, 2021).

In 2018, Congress passed the First Step Act, which, among other things, amended § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only if the offense occurs after a prior conviction under § 924(c) has

3

become final. *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020); *First Step Act*, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018). The changes to this provision of the First Step Act do not apply retroactively. *Jordan*, 952 F.3d at 174.

Mr. Hancock committed the crime of violence underlying his second § 924(c) conviction in July 2006, Doc. 1, and his first § 924(c) conviction was not final until, at the earliest, January 2008, when the mandate issued. Case No. 1:06-CR-206-2, M.D.NC., Doc. 125. Thus, under today's law, Mr. Hancock would be subject to a seven-year mandatory minimum sentence instead of a 25-year mandatory minimum sentence for the § 924(c) conviction arising from the July 2006 robbery. 18 U.S.C. § 924(c)(1)(A)(ii).

## PROCEDURAL HISTORY

In February 2020, Mr. Hancock filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), asserting that the statutory sentencing changes for successive § 924(c) charges are an extraordinary and compelling circumstance warranting a sentence reduction. Doc. 159 at 3–4. A few months later, he filed a paper writing that raised as an additional basis his health risks arising from the COVID-19 pandemic. *See* Case No. 1:06-CR-206-2, M.D.N.C., Doc. 286. The Court appointed counsel to represent Mr. Hancock, authorized him to file an amended § 3582(c)(1)(A) motion, and set a briefing schedule. Doc. 161. The briefing is complete, and the motions are ripe for review.

## FACTS

Outside of the bank robberies, Mr. Hancock's criminal record consists of a juvenile delinquency adjudication for driving after consuming alcohol and without a valid

4

license at age 15. Doc. 160 at ¶ 25.[4]  However, at the time of his arrest, Mr. Hancock was also facing charges for felony larceny of a motor vehicle and felony robbery with a dangerous weapon, *id.* at ¶ 28, and for first-degree murder. *Id.* at ¶ 30.  The government asserts without contradiction that these charges were later dismissed, Doc. 171 at 8 n.2, for reasons not affirmatively appearing in the record.[5]

Mr. Hancock played a significant role in the bank robberies.  In the first robbery, on March 21, 2006, he was the only robber to brandish a gun and he ordered the tellers on the floor.  Case No. 1:06-CR-206-2, M.D.N.C., Doc. 289 at ¶ 12.  During the second robbery, Mr. Hancock grabbed a customer and pointed a semi-automatic pistol at the customer; he then pointed the firearm at a bank teller's chest and demanded the money. Doc. 160 at ¶ 5.  Eventually, Mr. Hancock jumped on the counter and grabbed the money from the bank drawers.  *Id.*  He and his co-defendants used a car that a co-defendant had stolen at gunpoint to flee from the bank.  *Id.* at ¶¶ 4, 7.

Mr. Hancock has been incarcerated for some 14 years.  *Id.* at 1.  During that time, he has earned his GED and completed over 400 hours of educational and vocational skills, including courses for interview skills, victim awareness, and re-entry stimulation. Doc. 164-2.  Mr. Hancock has had two infractions since his incarceration:  one in July 2010 for possessing a dangerous weapon, and one in 2015 for failing to stand for count.

---

[4] The court also adopted the presentence report, Doc. 160, without change.  Doc. 175.

[5] The government contends the charges were dropped in view of the federal sentence, Doc. 171 at 8 n.2, but the citation for that assertion, the PSR in Case No. 1:06-CR-206-2, M.D.N.C., Doc. 289 at ¶¶ 34–36, shows the charges were still pending when the report was written.

5

Doc. 164-3. If released, Mr. Hancock plans to live with his mother in Greensboro, North Carolina. Doc. 164-1. He intends to support himself by earning his commercial driver's license and working as a truck driver. *Id.*

## COMPASSIONATE RELEASE

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A), often somewhat inaccurately called the "compassionate release" statute, is one such statutory provision. For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the defendant must first satisfy the administrative exhaustion requirement. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The defendant must then show that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).

## ANALYSIS & DISCUSSION

Mr. Hancock filed this compassionate release motion more than 30 days after he submitted his request for a reduction in sentence to the warden. *See* Doc. 164-1. The government does not contest that Mr. Hancock has exhausted his administrative remedies, *see* Doc. 165 at 5, and the Court finds that he has satisfied the exhaustion requirement. The Sentencing Commission has not yet adopted any policy statement

6

applicable to motions filed directly by defendants.  *See McCoy*, 981 F.3d at 282.  The Court considers the old policy statement applicable to motions brought by the BoP as helpful but non-binding guidance.  *Id.*

Mr. Hancock has withdrawn his contentions related to the pandemic.[6]  In support of his motion, he contends that the "severity of his sentence considering his age and criminal history when he committed offense conduct, the disparity between his sentences and those who are sentenced under the current law, and his rehabilitation present[] extraordinary and compelling reasons for a sentence reduction."  Doc. 174 at 3.

All parties agree that if Mr. Hancock were sentenced today, post-First Step Act, he would not be subject to the 25-year mandatory consecutive sentence imposed for second or successive § 924(c) convictions.  *Id.*; *see* Doc. 171 at 10.  The statutory minimum penalty for his § 924(c) convictions would be 17 years[7] rather than 35 years, creating an 18-year difference in the mandatory sentences on the § 924(c) convictions.

But, as the government correctly points out, defendants serving stacked § 924(c) sentences are not automatically entitled to relief under § 3582(c)(1)(A).  Judgments in this context must be the "product of individualized assessments of each defendant's sentence."  *McCoy*, 981 F.3d at 286.

---

[6] He withdrew this contention, Doc. 174 at 13, after the government submitted medical records showing that Mr. Hancock's blood pressure is regularly monitored and is not significantly elevated.  Doc. 166 at 2.

[7] Mr. Hancock is still subject to a 10-year mandatory minimum sentence for his first § 924(c) conviction because he brandished a short-barreled shotgun during the March 2006 robbery.  18 U.S.C. § 924(c)(1)(B)(i).  He was not charged with this enhancement for the July 2006 robbery, so the mandatory minimum consecutive sentence for his second § 924(c) conviction would be 7 years under today's law. § 924(c)(1)(A)(ii).

7

Since the sentencing judge had greater familiarity with the individual case and the individual defendant, *Gall v. United States*, 552 U.S. 38, 51–52 (2007), the Court's assessment is appropriately informed by the original judge's reasoned and discretionary sentence. Here, the same judge presided over two jury trials and sentenced Mr. Hancock for the convictions arising from the March 2006 and July 2006 robberies. The judge twice determined that a sentence within the advisory sentencing guidelines was appropriate. Case No. 1:06-CR-206-2, M.D.N.C., Doc. 115 at 5; *see* Doc. 153 at 7–8 (imposing guideline-range sentence).

During the first sentencing hearing, the judge explicitly noted that a sentence at the top of the guideline range was appropriate because Mr. Hancock brandished a firearm and "held the bank tellers at bay by having them lying on the floor." Case No. 1:06-CR-206-2, M.D.N.C., Doc. 115 at 5. The second sentencing hearing for the July 2006 robbery convictions was very short—neither party focused on any mitigating nor aggravating factual circumstances from the robbery, likely because of the mandatory 25-year consecutive sentence. Defense counsel asked the court to impose a sentence at the low-end of the guideline range of 57 months for the robbery convictions to run concurrently with Mr. Hancock's sentences for the March 2006 robbery, in light of his § 924(c) consecutive sentences in both cases. Doc. 153 at 6–8. Because of the mandatory consecutive sentences, the government did not object to a sentence at the low-end of the range for the robbery convictions, and the court imposed the requested sentence without much discussion. *See id.*

8

If this Court imposed the same sentences for his robbery convictions and reduced his second § 924(c) sentence to reflect the law today, his total sentence would be 261 months, which is a significant departure from his current 477-month sentence. On the record before the Court, it is impossible to discern whether the sentencing judge, who had had the benefit of observing Mr. Hancock and the proceedings in full, would have concluded that a 261-month sentence was sufficient. The judge did not express any concerns about the 300-month mandatory consecutive minimum sentence, and it seems likely that the government would have argued for a longer or consecutive sentence for the July robbery convictions if only a seven-year mandatory sentence was required for carrying the firearm. Moreover, Congress did not make the sentencing changes to § 924(c) retroactive, suggesting it concluded that some, or perhaps most, defendants serving a 25-year mandatory minimum consecutive sentence for a second or successive § 924(c) conviction received appropriate sentences. *See McCoy*, 981 F.3d at 287 (noting that it was reasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences and "thus to limit those reductions to truly extraordinary and compelling cases.").

*McCoy* clarified that courts may consider non-retroactive changes to statutory minimums in determining whether extraordinary and compelling circumstances warranting a sentence reduction exist, but the contours of that consideration are uncertain. As to Mr. McCoy, for example, the judge who granted the § 3582(c)(1)(A) motion was the sentencing judge, and at the original sentencing he had "alluded to the inappropriate nature of the 'stacked' penalties." *McCoy v. United States*, No. 2:03-CR-197, 2020 WL

9

2738225, at *5 (E.D. Va. May 26, 2020), *aff'd,* 981 F.3d 271 (4th Cir. 2020); *see also United States v. Brown*, 457 F. Supp. 3d 691, 702 (S.D. Iowa 2020) (granting compassionate release and noting that even the sentencing judge believed the "additional 300 months' imprisonment from the second § 924(c) count was 'far greater than was necessary to achieve the ends of justice.'").

The judge that sentenced Mr. Hancock expressed no views on whether the mandatory sentence was greater than necessary to achieve the statutory purposes of sentencing. *See* 18 U.S.C. § 3553(a). And it can hardly be doubted that courts evaluating § 3582(c)(1)(A) motions should "be wary of using the motion to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences." *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020). Compassionate release cannot be used as the exception that swallows the general rule of finality.

Like the defendants in *McCoy*, Mr. Hancock was quite young when he committed these robberies and he has compiled a good record while serving his time. But unlike those defendants,[8] he has not yet served the revised statutory minimum sentences, and, assuming without deciding that extraordinary and compelling circumstances exist, a sentence reduction to time-served would not be appropriate. Mr. Hancock participated in two extremely violent robberies, during which he pointed handguns at people and

---

[8] *See McCoy*, 981 F.3d at 277–78 (noting that at the time Mr. McCoy filed his motion for a sentence reduction, he had served over 17 years of his sentence, and defendants Keith Bryant, Kittrell Decator, and Craig Scott had each served approximately 25 years in prison).

10

threatened others. Mr. Hancock has not yet served 15 years, Doc. 171-1 at 5, and a time-served sentence would be shorter than the mandatory minimums required today for two § 924(c) convictions and would include no penalty for the robberies themselves. If the Court did grant the motion, any reduced sentence would be at least 22 years—57 months for the robberies, followed by the ten-year consecutive sentence for brandishing a firearm in the first robbery and the seven-year consecutive sentence for carrying a firearm in the second robbery—and it is entirely likely that a longer sentence for these two violent robberies would be necessary to provide just punishment, protect the public, and promote respect for the law.

The Court is not willing to grant the motion at this time, given that the sentencing judge determined a significant sentence was appropriate and expressed no qualms about the sentences he imposed, any sentence reduction would not result in a time-served sentence, and there is no present guidance from the Sentencing Commission on how judges, particularly successor judges, should evaluate these change-in-the-law motions. But Mr. Hancock was very young when he committed these crimes, the case law has changed, and he has done well in prison; a sentence reduction may ultimately be appropriate.

Therefore, the Court will leave open the door to a renewed motion in a few years. It seems likely that the case law will develop to provide successor judges with more direction and the Court may have the benefit of guidance from the Sentencing Commission on how to evaluate these kinds of motions, as contemplated by Congress. Mr. Hancock will be closer to the possibility of a time-served sentence and the record

11

Case 1:07-cr-00071-CCE   Document 176   Filed 03/05/21   Page 11 of 12

will show whether he has continued his positive rehabilitation efforts, has avoided disciplinary sanctions, and has a good release plan in place. Therefore, in its discretion, the motion will be denied without prejudice.

It is **ORDERED** that the defendant's motions for compassionate release, Docs. 159, 164, are **DENIED without prejudice.**

This the 5th day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE