IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:06-CR-206-2 |
| | ) | 1:07-CR-71-1 |
| JAMES THOMAS HANCOCK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, James Hancock, has been incarcerated for 15 years, since he was 18 years old, serving a 477-month sentence for his participation in a pair of violent armed bank robberies in 2006. After his motion for compassionate release was denied, he filed a renewed motion with additional evidence and arguments directed towards the Court's findings on the first motion. His arguments are not persuasive, and the new evidence does not support a sentence reduction. The motion will be denied.

In February 2020, Mr. Hancock filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) based on a post-sentencing change in the law and positive post-conviction conduct. *See* Doc. 159.[1] On March 5, 2021, after full briefing, the Court denied the motion without prejudice, noting that a time-served sentence would be inappropriate in view of the mandatory minimum sentence required today for his crimes and the violent nature of his offenses, but the Court left open the possibility that a renewed motion in the future, closer to the current mandatory minimum required for his

---

[1] All document citations are to the docket in Case No. 1:07-CR-71-1 (M.D.N.C.).

crimes, might be granted. Doc. 176 at 11–12; *United States v. Hancock*, No. 1:06-CR-206-2, 2021 WL 848708, at *1 (M.D.N.C. Mar. 5, 2021).

Mr. Hancock then filed the pending renewed motion for a sentence reduction. Doc. 177. He essentially asks the Court to reconsider its previous order, pointing out his disagreement with several findings and attempting to ameliorate some of the concerns expressed by the Court in deciding to deny the motion for the time being. Specifically, Mr. Hancock contends that:

(1) the Court should give no weight to the fact that the sentencing judge did not express concerns about the mandatory sentences imposed, *id*. at 2–3;

(2) concerns about whether the government would have sought a longer sentence for the convictions for the second robbery if the mandatory sentence for carrying the firearm during the robbery had been limited to seven years rather than 25 years are hypothetical and speculative in light of a plea offer Mr. Hancock received before trial, *id*. at 4;

(3) concerns about finality of sentences and giving weight to mandatory sentencing requirements as they currently exist should not prevent his early release, *id*. at 4–5;

(4) the robberies he committed were serious but not "extremely violent" as the Court found, *id*. at 5–6;

(5) he "was a young man . . . with a nonviolent criminal history at the time of his offense, making the application of such harsh penalties designed for violent, recidivist offenders even more inappropriate," *id*. at 3;

2

Case 1:07-cr-00071-CCE   Document 180   Filed 08/20/21   Page 2 of 6

(6) the Court did not take into account a state sentence Mr. Hancock will serve after he concludes his federal sentence, *id*. at 6; and

(7) he will not be a danger to the community when he is released given the state sentence and his "sincere rehabilitation." *Id*.

As to most of these points, nothing in the motion causes the Court to re-evaluate its earlier decision. Mr. Hancock does little more than disagree with how the Court previously examined the relevant considerations, and, overall, his arguments are not persuasive for the reasons the Court has already stated. *See generally* Doc. 176.

He has, however, made a new argument based on a new fact: a state sentence he is presently subject to serving. When the Court decided his first compassionate release motion, it was under the impression that that the state had dismissed a first-degree murder charge pending when Mr. Hancock was sentenced. *See id*. at 5. Mr. Hancock through counsel did not mention this sentence in his original motion and briefing, *see* Docs. 159, 164, 174. In their briefing on the first motion, the government asserted without contradiction that the first-degree murder charge was dismissed, Doc. 171 at 8 n.2, though it had not supported the assertion with evidence. Doc. 176 at 5 n. 5.

Mr. Hancock asserts in his renewed motion that he is facing a long active North Carolina state sentence so that if he were re-sentenced here to time-served, he would go into state custody. Doc. 177 at 6. The probation office has obtained records from the state court, which show that Mr. Hancock is indeed facing such a sentence. Doc. 178 at 2–3. Specifically, after he was sentenced on his federal charges, he pled guilty to second-degree murder in state court. *Id*. at 2. He was sentenced to 220 to 273 months, to run
3

concurrently with his federal sentences. *Id*. at 2–3. Mr. Hancock asserts that if his federal sentences are reduced to time served, he will be transferred to state custody to serve the rest of that state sentence, which, he contends, is sufficient but not greater than necessary to serve the ends of justice. *See* Doc. 177 at 6.

The Court assumes Mr. Hancock would be transferred to state custody if his federal sentence is reduced to time served. *See Setser v. United States*, 566 U.S. 231, 241 (2012) (noting that if a defendant "serves his federal sentence first, the State will decide whether to give him credit against his state sentences . . . ."). But that fact does little to support his motion. First, it is now clear that in addition to committing the two violent bank robberies that underly his federal convictions, Mr. Hancock murdered a man on July 18, 2006, just a few months after the first bank robbery and less than two weeks after the second bank robbery. *See* Doc. 176 at 1–2. His crime spree was thus significantly more violent than the Court realized when it decided the first motion for compassionate release, and this factor weighs even further against a time-served sentence.

Second, the state court relied on the fact that Mr. Hancock had received a long federal sentence when he was sentenced on the murder charge. *See, e.g.*, Doc. 178 at p. 10 ¶ 5, p. 12 ¶ 2.[2] He was tried, convicted, and sentenced in federal court to 477 months

---

[2] It appears that Mr. Hancock was in primary state custody on the pending murder charge in 2007 and 2008 when his federal charges were resolved. *See, e.g.*, Doc. 46. Thereafter, he pled guilty in state court to second-degree murder with the agreement that his state sentence would run concurrently to his federal sentence, and that sentence was imposed. Doc. 178 at 18, 21. This turned out to be impossible because, under federal law, a defendant cannot begin serving a federal sentence until he is in federal custody. 18 U.S.C. § 3585(a); *Setser*, 566 U.S. at 241 (noting that when a prisoner "starts in state custody, serves his state sentence, and then moves to federal custody, it will always be the Federal Government—whether the district court or the

4

in prison before he resolved his pending state murder charge. The state court knew about his federal sentence when it sentenced him to a much shorter sentence, pursuant to a plea agreement, and the state litigants and the state court contemplated that he would serve his entire state sentence while in federal custody. *Id*. at p. 10 ¶ 5, p. 12 ¶ 2, pp. 21–25. This fact also weighs against reducing the federal sentence to time served.

The Court remains convinced that a time-served sentence would not be appropriate. *See* Doc. 176 at 10–11. It would be less than the revised statutory minimum sentences and would not provide just punishment. The new evidence of the second-degree murder conviction weighs against a sentence reduction, not in favor of it.

If and when Mr. Hancock is closer to serving the mandatory minimum sentences required under the law today for his federal crimes, he may renew his motion. The new evidence about his murder conviction will be relevant and will have to be weighed with all the other circumstances and § 3553(a) factors as they exist at that time. The Court expresses no opinion as to whether any such future motion should be granted or denied.

The probation office appropriately filed the state court records under seal, given that they include some health information typically filed under seal in connection with sentencing matters. But these records are publicly available in the state court file, so

---

Bureau of Prisons—that decides whether he will receive credit for the time served in state custody."); *see also* Doc. 178 at 14. As a result, his guilty plea in state court was vacated, he was released to federal custody to begin serving his federal sentence; he thereafter returned to state court to plead guilty again to second-degree murder with the agreed-upon concurrent sentence re-imposed. *See* Doc. 178 at 10–11 (consent order granting the motion and reflecting agreed-upon terms of vacatur and repleading), 12–15 (motion for appropriate relief referencing terms of federal sentence and impossibility of concurrent sentence).

5

sealing is unnecessary here. The Court will therefore direct the Clerk to unseal the state court records filed here.

It is **ORDERED,** in the Court's discretion, that:

1. The defendant's renewed motion for compassionate release, Doc. 177, is **DENIED**.

2. The Clerk shall unseal the state court records at Doc. 178.

This the 20th day of August, 2021.

_____
UNITED STATES DISTRICT JUDGE

6